UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VICTORIA BENDLER-REZA,<br>    *Plaintiff*,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION,<br>    *Defendant*. | No. 3:15-cv-1576 (JAM) |

**RULING ON CROSS MOTIONS TO REMAND AND AFFIRM
THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY**

Plaintiff Victoria Bendler-Reza claims that she is disabled and cannot work as a result of spinal and knee injuries, as well as several psychiatric conditions. She brought this action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of the defendant Commissioner of Social Security, who denied her claim for disability insurance benefits (DIB) and supplemental security income (SSI). The Commissioner concluded that although plaintiff suffered from severe impairments and could not work in her previous job, she could still work in another type of job. For the reasons that follow, I will grant in part plaintiff's motion to reverse or remand the decision of the Commissioner (Doc. #14), deny defendant's motion to affirm the decision of the Commissioner (Doc. #15), and remand the case for prompt reconsideration by the ALJ.

**BACKGROUND**

The Court refers to the transcripts provided by the Commissioner. Docs. #12-1 through #12-10. Plaintiff is a 43-year-old, morbidly obese woman who lives in Seymour, Connecticut. Her last job prior to becoming disabled was working as a certified nurse's aide and home health

1

aide in facilities and in people's homes. Although she had a severe knee injury, she would change sheets, cook meals, clean houses, and help her clients take care of their physical needs. In January 2010, when she was 37 years old, plaintiff fell at work and severely injured her back. Plaintiff has not worked since January 31, 2010, the date of alleged onset of her disability, and has fallen several times since then.[1] Her date last insured (DLI) is September 30, 2013.

      Plaintiff applied for SSI on July 16, 2012. Her application for DIB and SSI was initially denied in February 2013 and upon reconsideration in May 2013. Plaintiff was represented by an attorney at a hearing in March 2014 before Administrative Law Judge (ALJ) Deirdre R. Horton. On April 11, 2014, the ALJ held that plaintiff was not disabled as defined by the Social Security Administration (SSA). Plaintiff requested Appeals Council review of the ALJ's decision in May 2014, which was denied in September 2014. She then filed this federal action asking the Court to reverse the Commissioner's decision or to remand the case for rehearing (Doc. #14). In response, the Commissioner has moved to affirm the SSA's final decision (Doc. #15). Among other claims, plaintiff contends that the ALJ improperly formulated plaintiff's residual functional capacity and failed to obtain testimony from a vocational expert. Although I disagree with plaintiff's other objections, I agree that the ALJ erred in formulating plaintiff's residual functional capacity and that the ALJ should have addressed whether plaintiff's non-exertional limitations were more than negligible such that vocational expert testimony should have been considered.

---

[1] Plaintiff's original claimed date of disability was August 13, 2003, although it was amended at the hearing level. The ALJ's decision references the 2003 date in several sections, but this appears to be only a typographical error.

2

**DISCUSSION**

The Court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks and citation omitted); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (*per curiam*). Absent a legal error, this Court must uphold the Commissioner's decision if it is supported by substantial evidence and even if this Court might have ruled differently had it considered the matter in the first instance. *See Eastman v. Barnhart*, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

To qualify for disability insurance benefits, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that [the claimant] is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [a claimant] live[s] or in several other regions of the country," and "when there is a significant number of jobs (in one or more occupations) having requirements which [a claimant] [is] able to meet with [her] physical or mental abilities

3

and vocational qualifications." 20 C.F.R. § 404.1566(a)–(b); *see also Kennedy v. Astrue*, 343 F. App'x 719, 722 (2d Cir. 2009) (summary order).

To evaluate a claimant's disability, and to determine whether he or she qualifies for benefits, the agency engages in the following five-step process:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed [in the so-called "Listings"] in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122–23 (2d Cir. 2012) (alteration in original) (citation omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(i)–(v). In applying this framework, if a claimant can be found disabled or not disabled at a particular step, a decision will be made without proceeding to the next step. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving her case at steps one through four; at step five, the burden shifts to the Commissioner to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

Here, the ALJ found at step one that plaintiff did not engage in substantial gainful activity during the relevant time period. At step two, the ALJ found that plaintiff suffered from the following "severe impairments" during the relevant time period: lumbar spondylosis with radiculopathy, cervical radiculopathy, degenerative joint disease of the left knee, morbid obesity,

mood disorder, generalized anxiety disorder, borderline personality disorder, and alcohol dependence. Doc. #12-3 at 17. The ALJ determined that a number of plaintiff's other conditions did *not* constitute severe impairments, including PTSD, hyperlipidemia, hypertension, and COPD.

At step three, the ALJ declined to conclude that plaintiff was *per se* disabled, because plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Doc. #12-3 at 17. The ALJ considered listings 1.02 (major joint dysfunction), 1.04 (spine disorder), 12.04 (affective disorder), 12.06 (anxiety disorder), 12.08 (personality disorder), 12.09 (substance addiction disorder), focusing in particular on 12.04 and 12.09. Those two listings require—with certain limited exceptions referred to as "paragraph C" criteria—at least two of the following "paragraph B" criteria:

    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration[.]

The ALJ concluded that none of the paragraph C criteria applied in plaintiff's case. In addition, she found that plaintiff had mild limitations in the first two paragraph B criteria, moderate difficulties in the third criteria, and had experienced no repeated episodes of decompensation.

Proceeding to step four, the ALJ was required to identify plaintiff's "residual functional capacity" (RFC), which is "the most the claimant can still do in a work setting despite the limitations imposed by h[er] impairments." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (*per curiam*). The ALJ concluded that plaintiff's RFC enabled her to perform sedentary work except that plaintiff could lift twenty pounds occasionally and ten pounds frequently; could climb ramps and stairs occasionally but never climb ladders, ropes, or scaffolds; could never

kneel, crawl, or crouch; could work in a setting free of concentrated exposure to hazardous machinery and unprotected heights; could work in a setting free of concentrated exposure to environmental irritants such as dust, fumes, and gases; and could perform simple tasks, but only occasionally perform complex tasks. Doc. #12-3 at 19; *see also* 20 C.F.R. § 404.1567.

In calculating plaintiff's RFC, the ALJ made findings as to plaintiff's credibility, specifically finding that "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." As to plaintiff's physical impairments—her back and knee pain—the ALJ concluded that plaintiff suffered from pain, but that her symptoms "did not suggest extreme physical limitations" in light of her treating physician's consistent recommendation of conservative measures such as physical therapy, Vicodin, pain patches, weight loss, and a TENS unit, and the fact that her physician did not give activity restrictions. Doc. #12-3 at 21. The ALJ assessed the opinion of Dr. Joseph B. Guarnaccia, a consultative examiner, and assigned it "little weight." Doc. #12-3 at 23.

As to plaintiff's mental impairments, the ALJ concluded that although plaintiff exhibited symptoms of anxiety, she was generally stable and, if she at times appeared more anxious, it was often a result of psychosocial stressors. Doc. #12-3 at 22. In making this determination, the ALJ gave "some weight" to the opinions of Dr. Marie Solazzo, plaintiff's treating psychologist, noting that Dr. Solazzo's answers in a 2014 Mental Residual Functional Capacity Questionnaire were not corroborated by clinical observations. Doc. #12-3 at 23. The ALJ also gave "some weight" to the opinions of Dr. Liese Franklin-Zitzkat, an expert consultative examiner on mental health issues, and "some weight" to the opinions of Dr. Douglas Rau, a state agency reviewing physician. Doc. #12-3 at 23.

Based on this evaluation, the ALJ determined that plaintiff could not perform any of her past work as a certified nurse's aide or home health aide. Doc. #12-3 at 25. However, at step five, the ALJ considered plaintiff's age, education, work experience, and RFC, and concluded that plaintiff is capable of performing jobs that exist in significant numbers in the national economy, and therefore concluded that plaintiff is not disabled as defined by the Social Security Act. Doc. #12-3 at 25; *see* 20 C.F.R. § 404.1520.

\* \* \*

Plaintiff contends that the ALJ erred in steps three, four, and five, by failing to: (1) conclude that plaintiff has listed impairments of 12.08 and 1.04(A) or (C); (2) follow the treating physician rule; (3) properly evaluate the duration, persistence, location, and severity of plaintiff's pain; (4) formulate the RFC to account for all of plaintiff's impairments; and (5) obtain testimony from a vocational expert.

### *Step Three: Plaintiff's Impairments or Combination of Impairments Did Not Meet or Medically Equal the Severity of a Listed Impairment*

Plaintiff objects to the ALJ's finding that plaintiff did not have a listed impairment as defined in the Social Security regulations. Specifically, plaintiff argues that she meets the following regulatory requirement for a listed impairment:

> 1.04 Disorders of the spine (e.g., . . . spinal stenosis, . . . [or] degenerative disc disease . . . ), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or . . .
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1. Although the ALJ did not set forth her reasoning for finding that plaintiff's impairments did not meet or medically equal this listing, her finding is supported by substantial evidence. As to Listing 1.04(A), although plaintiff has a painful range of motion and positive straight leg raising, there is scant evidence of nerve root compression and, in fact, as of October 23, 2013, imaging revealed no evidence of nerve root compression. Doc. #12-9 at 132. As to Listing 1.04(C), plaintiff was diagnosed with "some" spinal stenosis in the L5-S1 region, Doc. #12-8 at 39, but the record does not reflect the presence of the remaining requirements, including the "inability to ambulate effectively" under 1.00B2b, which is defined as "having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." Plaintiff testified that she does not use a cane at all times (or even two canes), and that she attends almost all of her son's baseball games and stopped attending them only because of a vitamin deficiency. Doc. #12-3 at 44, 52, 63. The record also reflects that plaintiff is able to do her own shopping and carry out most activities of daily living. Doc. #12-7 at 12–19. The ALJ's finding that plaintiff's impairments or combination of impairments did not meet or medically equal the severity of Listing 1.04 is supported by substantial evidence.

  Plaintiff also argues that she meets the regulatory requirement for Listing 12.08 (personality disorders), because she has been diagnosed with Borderline Personality Disorder, Generalized Anxiety Disorder, and has deeply ingrained maladaptive patterns of behavior. On this point, the ALJ concluded that the plaintiff's mental impairments did not result in at least two of the paragraph B criteria required for listings 12.04, 12.06, 12.08, and 12.09, finding plaintiff's impairments to cause only "mild" restriction of activities of daily living, "mild" difficulties in

maintaining social functioning, and "moderate" difficulties in maintaining concentration, persistence, or pace.[2] Doc. #12-3 at 18.

Plaintiff asserts that she was "markedly" restricted in these areas, though I note, first, that a finding of "marked difficulties" in one area would be insufficient to uphold a conclusion that the severity of plaintiff's mental impairments is equivalent to a listed impairment. Even so, I conclude that all three of the ALJ's findings were supported by substantial evidence. As to plaintiff's ability to carry out the activities of daily living, the ALJ noted that plaintiff cooks meals, shops for groceries, manages her personal finances and those of her father's estate, among other activities. Doc. #12-3 at 18. She also concluded that plaintiff's limitations in the activities of daily living were caused primarily by physical—not mental—limitations, which is borne out by the record evidence. Doc. #12-3 at 18. Dr. Rau, who examined plaintiff's records at the initial and reconsideration levels, concluded that plaintiff had only a "mild" restriction in activities of daily living, Doc. #12-4 at 40, and substantial evidence supports the ALJ's identical conclusion.

As to impairment in social functioning, the record reveals that plaintiff has interpersonal difficulties. But the ALJ found that plaintiff has "mild" difficulties in maintaining social functioning, noting plaintiff's testimony that she socializes on a daily basis and leaves her home four or five days a week. Doc. #12-3 at 18. This finding is supported by substantial evidence, including the opinion of Dr. Rau. Doc. #12-4 at 40.

As to the last applicable criterion, the ALJ noted that the plaintiff has "moderate" difficulties in maintaining concentration, persistence, or pace, pointing to mental status evaluations—a probative source on a somewhat hard-to-measure criterion—that showed only mild memory and concentration impairment. The ALJ's finding on this criterion is supported by

---

[2] Plaintiff does not contend that she experienced episodes of decompensation.

substantial evidence, the opinion of Dr. Rau, Doc. #12-4 at 40, and the opinion of Dr. Zitzkat, who opined that plaintiff would have only mild difficulty remembering instructions and sustaining concentration in a work setting. Doc. #12-8 at 156.

In additional support for her claim that the ALJ erred in assessing the severity of plaintiff's "paragraph B" limitations, plaintiff relies heavily on the opinion of Dr. Solazzo, her treating psychologist, even if Dr. Solazzo did not separately assess plaintiff's impairments with respect to each paragraph B criterion. Nevertheless, plaintiff contends that the ALJ erroneously found plaintiff's impairments in those criteria to be less severe because of misapplication of the "treating physician rule." The treating physician rule requires that "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Burgess*, 537 F.3d at 128; 20 C.F.R. § 404.1527(d)(2). Even if the treating physician's opinion is not given controlling weight, the ALJ must consider a number of factors to determine the proper weight to assign, including "the [l]ength of the treatment relationship and the frequency of examination; the [n]ature and extent of the treatment relationship; the relevant evidence . . . , particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess*, 537 F.3d at 129. After considering these factors, the ALJ is required to "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion. . . . Failure to provide such 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id.* at 129–30.

The ALJ did not err in assigning only "some weight" to Dr. Solazzo's opinion on the severity of plaintiff's mental health impairments. The ALJ acknowledged the length and frequency of treatment, 20 C.F.R. §§ 404.1527(c)(2)(i)–(ii), and that Dr. Solazzo was an expert, but she nevertheless determined that Dr. Solazzo's opinion was not consistent with the record as a whole because "the serious and extreme limitations described by Dr. Solazzo [were] simply not corroborated by clinical observations." 20 C.F.R. §§ 404.1527(c)(2). The record revealed mental status examinations which did not reflect mental limitations severe enough to be "disabling."

The ALJ also did not credit Dr. Solazzo's conclusion that plaintiff could not work on a sustained basis due to her spotty attendance at therapy sessions because plaintiff had consistently attended sessions with a different doctor, Dr. Matza. Although Dr. Solazzo stated that plaintiff's mental impairments affected her ability to function in a group setting without distracting others, and caused her to be very talkative and easily overwhelmed by stress, Doc. #12-10 at 122–23, the record as a whole did not reflect disabling limitations. For example, at plaintiff's initial psychiatric evaluation, plaintiff reported that she sought treatment for assistance in getting "some support and me time." Doc. #12-8 at 72. In 2011, plaintiff stated that her mental impairments did not impact her ability to work, and that she sought disability for physical symptoms only. Doc. #12-4 at 8. In 2013, plaintiff stated that she is not "mentally handicap[ped]" and has "worked through" her various mental diagnoses with therapy. Doc. #12-7 at 42. At her evaluation with Dr. Zitzkat, she stated that "[d]epression is not disabling me." The ALJ noted that plaintiff was generally stable, and that her worsening symptoms generally corresponded with psychosocial stressors. Doc. #12-9 at 2– 6, 136–38; Doc. #12-10 at 119–24. At oral argument before me, plaintiff focused primarily on her physical limitations, not her mental limitations. Substantial

evidence supports the ALJ's conclusion that Dr. Solazzo's opinion of the severity of plaintiff's mental impairments was inconsistent with the record as a whole.

Because I conclude that the ALJ did not misapply the treating physician rule as to the opinions of Dr. Solazzo, I also conclude that she did not misapply that rule as to Dr. Zitzkat, a consultative examiner whose mental health opinions were also assigned only "some weight." Plaintiff contends that, even though Dr. Zitzkat was not her treating psychologist, Dr. Zitzkat's opinions would be entitled to greater weight under the treating physician rule if they were similar to those of her *actual* treating psychologist. Though plaintiff cites no authority for this proposition, it would nevertheless be unavailing first because Dr. Solazzo's opinions were given proper weight, and second because substantial evidence supports the ALJ's finding that Dr. Zitzkat's conclusions, too, were inconsistent with the record as a whole.

### *Step Four: The ALJ Properly Formulated Plaintiff's RFC, in part.*

Next, plaintiff assigns several errors to the ALJ in her formulation of the RFC. Plaintiff first assigns error to the ALJ's consideration of plaintiff's pain, contending that the ALJ failed to evaluate all of plaintiff's pain-causing ailments, in violation of 20 C.F.R. § 404.1529. The ALJ found credible that plaintiff had chronic pain in her neck, lower back, and left knee because such testimony was corroborated by medical imaging and clinical observations. The ALJ did not conclude that this pain was disabling, however, noting that plaintiff's medications helped with her pain, and that plaintiff's physician repeatedly recommended conservative measures for treatment and pain control. Doc. #12-3 at 21. This conclusion is supported by substantial evidence. *See Dumas v. Schweiker*, 712 F.2d 1545, 1552–53 (2d Cir. 1983) ("to be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment.").

Plaintiff also contends that the ALJ should have determined that plaintiff experienced *additional* pains, including arm pain, hip pain, and stomach pain, which would have affected the RFC to the extent it impacted plaintiff's "ability to grasp, lift, hold, carry, and manipulate objects." But the Commissioner correctly notes that the RFC already restricts plaintiff to sedentary work, which, by definition, requires lifting "no more than 10 pounds at a time." 20 C.F.R. § 416.967(a). While the record does disclose that plaintiff suffers from some arm pain, hip pain, and stomach pain, the ALJ's conclusion that that pain is not disabling is supported by substantial evidence.

Plaintiff next contends that, in formulating the RFC, the ALJ failed to address: (1) plaintiff's arm limitation from neck pain, (2) her need to ambulate with a cane, (3) her inability to maintain "attention, pace, persistence, and concentration," and (4) her inability to interact with the public, supervisors, or coworkers. I do not agree that the RFC failed to account for the first three of these limitations. The RFC provides for sedentary work, which by definition involves sitting and for which walking and standing are required only occasionally. *See* 20 C.F.R. § 416.967(a). Additionally, the RFC prohibited crawling, kneeling, or crouching, adequately addressing plaintiff's limited ability to ambulate. As to the claim that the ALJ should have limited plaintiff's RFC with respect to neck pain and use of her arms, the RFC provides for only occasional light lifting and, as a separate matter, the ALJ's findings about plaintiff's arm pain is supported by substantial evidence. As to her claim that the ALJ should have limited plaintiff's RFC to account for inability to maintain attention, pace, persistence, and concentration, the ALJ noted that plaintiff had "mild memory problems and mildly impaired concentration, which would limit [plaintiff] to performing simple work." Doc. #12-3 at 21. The RFC thus accounts for this limitation.

But as to the last of these limitations—plaintiff's limited ability to interact with the public, supervisors, or coworkers—I cannot conclude that the RFC was properly formulated. The ALJ explicitly found at step four that plaintiff's "diagnosed personality disorder . . . would limit [plaintiff's] ability to interact with others," and stated that she "reduced the claimant's residual functional capacity to accommodate" that limitation. Doc. #12-3 at 24. To that end, the Commissioner asserts that the RFC was limited to "unskilled work [which] generally involves working with things rather than data or people." Doc. #15-1 at 32. But I do not agree that a limitation of plaintiff's RFC to "unskilled work" appropriately accounts for her limitation in interacting with the public, supervisors, or coworkers. *See* SSR 85-15 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) . . . *to respond appropriately to supervision, coworkers, and usual work situations*. . . . A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." (emphasis added)). Because the ALJ made a finding that this limitation affected plaintiff's residual functional capacity in *some* way, but because the RFC does not appear to address the functional limitations resulting from this impairment, *e.g.*, *Lyde v. Colvin*, 2016 WL 53822, at *3 (D. Conn.) (reducing RFC to "only occasional interaction with the public, coworkers, or supervisors"), I cannot conclude that the ALJ's formulation of the RFC is supported by substantial evidence. Although the Commissioner argues that this was a harmless error because it would not have affected the ultimate conclusion that plaintiff was not disabled, I do not agree, as I will discuss in the next section.

### *Step Five: The ALJ Should Have Obtained Testimony from a Vocational Expert.*

Plaintiff asserts that the ALJ should have obtained testimony from a vocational expert because the ALJ found several severe non-exertional limitations to be present and yet still relied

solely on the Social Security Administration's Medical-Vocational Guidelines (colloquially known as "the Grids") to determine whether plaintiff could find work in the national economy. It is well established that the Commissioner may ordinarily satisfy her burden of proof at step five by means of reliance on the Grids and their determinations of the types and numbers of jobs that exist in the national economy based on a claimant's age, ability, education, and work experience. *See, e.g.*, *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Heckler v. Campbell*, 461 U.S. 458, 461–62 (1983). But the Grids are premised on limitations relating to a person's physical strength, and "are inapplicable in cases where the claimant exhibits a significant non-exertional impairment (*i.e.*, an impairment not related to strength)." *Selian*, 708 F.3d at 421; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e) (Grids not "fully applicable" for "certain mental, sensory, or skin impairments").

If the Grids are inadequate, then an ALJ must instead consider vocational expert testimony. *See Butts v. Barnhart*, 388 F.3d 377, 383–84 (2d Cir. 2004) [hereinafter *Butts I*], *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005) [hereinafter *Butts II*]. The Second Circuit maintains a case-by-case approach to assessing applicability of the Grids and the need for expert testimony to determine the employability of claimants who fall into this category. *See ibid.*; *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986); SSR 85-15 ("Determining whether [mentally impaired] individuals will be able to adapt to the demands or 'stress' of the workplace is often extremely difficult" and requires a thorough "evaluation on an individualized basis.").

Notably, the Second Circuit has made clear that "the ALJ cannot rely on the Grids if a non-exertional impairment [such as a mental limitation] has any more than a 'negligible' impact on a claimant's ability to perform the full range of work, and instead [the ALJ] must obtain the testimony of a vocational expert." *Selian*, 708 F.3d at 421 (quoting *Zabala v. Astrue*, 595 F.3d

402, 411 (2d Cir. 2010)). "A nonexertional impairment is non-negligible 'when it . . . so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" *Ibid.* (quoting *Zabala*, 595 F.3d at 411).

An ALJ must make a specific finding on the significance of the non-exertional impairment, and adequately explain that finding on the record, to determine whether he or she must consider testimony from a vocational expert. *See Bapp*, 802 F.2d at 603, 605–06. If the ALJ declines to hear vocational expert testimony in the face of evidence that a claimant has significant non-exertional limitations, but offers no adequate explanation for his decision, *ibid.*, or if the ALJ fails "to apply correctly the distinction between cases where reliance on the grid suffices and those where the testimony of a vocational expert is essential to a denial of benefits," a court should remand the case. *Butts I*, 388 F.3d at 387; *see also Ramos v. Barnhart*, 2006 WL 980570, at *13 (D. Conn. 2006) ("Remand is particularly appropriate where ... the Court is 'unable to fathom the ALJ's rationale in relation to the evidence in the record' without 'further findings or a clearer explanation for the decision.'" (citation omitted)).

In formulating plaintiff's RFC at step four, the ALJ noted that "mental status examinations do not reflect disabling limitations that would preclude the claimant from performing the basic mental demands of unskilled work." Doc. #12-3 at 21. She later noted that plaintiff had "mild memory problems and mildly impaired concentration, which would limit [plaintiff] to performing simple work," and addressed plaintiff's "diagnosed personality disorder, which would limit [plaintiff's] ability to interact with others." Doc. #12-3 at 24. She then concluded that she "reduced the claimant's residual functional capacity to accommodate those [non-exertional] limitations." Doc. #12-3 at 24. As discussed in the prior section, that plaintiff's

RFC was limited to unskilled work might have addressed the former of these non-exertional limitations, but not the latter.

Even so, at step five, the ALJ only nominally addressed plaintiff's non-exertional limitations when she found that "the number [of] jobs at the sedentary exertional level [for claimant's listing at Medical-Vocational Rule 201.28] is not significantly eroded if the claimant can perform the basic mental demands required by competitive, remunerative, unskilled work." Doc. #12-3 at 26 (emphasis added). This statement does not identify which or how many of plaintiff's non-exertional limitations the ALJ considered; *see Bapp*, 802 F.2d at 606; nor establishes that the ALJ found the effect of those non-exertional limitations on plaintiff's vocational capacity to be non-negligible. *Selian*, 708 F.3d at 422. This conclusion (with its focus on the Grid's occupational base rather than plaintiff's own limitations) "failed to consider the intermediate question—whether the range of work [plaintiff] could perform was so significantly diminished as to require the introduction of vocational testimony." *Bapp*, 802 F.2d at 606.

Particularly and critically absent from the ALJ's finding is any discussion of how much plaintiff's inability to appropriately interact with others would erode the range of work she could perform. *Compare* SSR 85-15 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) . . . *to respond appropriately to supervision, coworkers, and usual work situations*. . . . A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." (emphasis added)), *with* Doc. #12-10 at 122 ("[plaintiff's] symptoms interfere in . . . ability to function in a group setting"); Doc. #12-10 at 122 ("[u]nable to meet competitive standards" in "[g]et[ting] along with co-workers or peers without unduly . . . exhibiting behavioral extremes");

17

Doc. #12-8 at 156 ("moderate to marked difficulty responding appropriately to supervisors and coworkers at times, especially if she feels someone is rude or critical of her").

Accordingly, I remand the case to the ALJ to reconsider her determination as to steps four and five. On remand, the ALJ should provide a clear explanation regarding how and whether the current formulation of plaintiff's RFC accounts for plaintiff's limited ability to interact with others and, if necessary, reformulate the RFC. After addressing and/or correcting her errors as to step four, the ALJ should provide a clear explanation regarding the extent to which each of plaintiff's non-exertional limitations diminishes her ability to perform work at all levels. If the ALJ concludes that plaintiff's non-exertional limitations are more than non-negligible, then she should consider vocational expert testimony to ascertain the existence of jobs in the economy for an individual with plaintiff's limitations. If the Commissioner fails to present "a vocational expert to testify that a person with [plaintiff's] attributes and qualifications could find" work in the national economy, the ALJ should conclude that plaintiff is disabled. *Butts II*, 416 F.3d at 104. The ALJ should complete this reconsideration within either 120 days or 90 days from the date that plaintiff advises the ALJ that she is ready to go forward with further proceedings, whichever is longer. *See Barbour v. Astrue*, 950 F. Supp. 2d 480, 491 (E.D.N.Y. 2013), *amended on reconsideration* (July 25, 2013).

## CONCLUSION

Plaintiff's motion to reverse or remand (Doc. #14) is GRANTED in part. Defendant's motion to affirm the decision of the Commissioner (Doc. #15) is DENIED. The case is remanded for the ALJ to evaluate whether plaintiff's RFC accounts for plaintiff's limited ability to interact with others and, if necessary, to reformulate the RFC. The case is further remanded for the ALJ to evaluate the significance of plaintiff's non-exertional limitations and, if necessary, to consider

vocational expert testimony as to plaintiff's ability to find work that exists in the national economy.

It is so ordered.

Dated at New Haven, Connecticut, this 22nd day of September 2016.

    /s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge